UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| FORTUNET, a Nevada corporation,<br><br>Plaintiff,<br><br>v.<br><br>EQUBE INTERNATIONAL INC., a foreign corporation; JACK CORONEL, an individual; DEWAYNE WOOTEN, an individual,<br><br>Defendants. | Case No. 2:15-cv-00312-APG-CWH<br><br>**ORDER DENYING CORONEL'S MOTION FOR SUMMARY JUDGMENT AND DENYING MOTIONS FOR SANCTIONS**<br><br>(Dkt. ##7, 10, 15, 16, 17) |

FortuNet filed its complaint against Jack Coronel, eQube International, Inc., and DeWayne Wooten, asserting violations of the Lanham Act and seeking declaratory judgment. FortuNet alleges that the defendants are misusing a judgment issued in a related state court proceeding in a way that violates its rights under Section 43(a) of the Lanham Act.

Defendant Coronel moves for summary judgment as to all of FortuNet's claims against him, arguing that (1) they are barred by the doctrines of res judicata and collateral estoppel, (2) the federal Anti-Injunction Act prohibits me from intervening in an ongoing state court case, and (3) this case should be dismissed pursuant to the abstention principles of *Younger v. Harris*. In its opposition, FortuNet moves for discovery pursuant to Rule 56(d).

Both Coronel and FortuNet move for sanctions against each other. Coronel moves against FortuNet under Federal Rule of Civil Procedure 11 while FortuNet moves against Coronel's counsel under 28 U.S.C. § 1927.

I deny Coronel's motion for summary judgment in full and deny FortuNet's Rule 56(d) motion as moot. I also deny both parties' motions for sanctions.

## I. BACKGROUND

FortuNet is a manufacturer, distributor, and operator of gaming equipment. (Dkt. #1 at 2.) It provides casinos and bingo halls with electronic bingo systems, including stationary and portable bingo player units and bingo game management systems. (*Id.*) In 2002, FortuNet hired Jack Coronel as its Director of Compliance. (Dkt. #7-1 at 2.)

FortuNet alleges that in 2011 it learned that Coronel had—through business entities controlled by him and with the help of defendant DeWayne Wooten—entered into contracts with some of FortuNet's customers wherein Coronel charged them fees for using "game strategies." (Dkt. #1 at 3.) The "game strategies" appear to be mechanisms by which players on electronic bingo systems can win additional prizes by conducting multiple wagers. (*See* Dkt. #7-5 at 4; Dkt. #1 at 3.) In 2008 and 2009, Coronel filed patent applications for these "game strategies." (Dkt. #7-1 at 2.) According to Coronel, his employment agreement with FortuNet allowed him to pursue business opportunities that were not competitive with FortuNet's business. (*Id.*; Dkt. #7-5 at 4.)

After learning of Coronel's contracts with FortuNet's customers, FortuNet fired Coronel. (Dkt. #1 at 3; Dkt. #7-1 at 4.) Soon thereafter, FortuNet filed suit in Nevada state court against Coronel, Wooten, and other defendants not named in this federal action, related to the marketing and selling of the "game strategies." (Dkt. #7-1 at 4.) In October 2013, after a jury trial and verdict, Judge Elizabeth Gonzalez issued Findings of Fact and Conclusions of Law and Judgment on Declaratory Relief (the "October Judgment") finding, in part, that the "game strategies" are the exclusive property of Coronel and/or his business entities. (Dkt. #7-5 at 4.)

In February 2015, FortuNet filed this federal lawsuit alleging that the October Judgment failed to identify what the "game strategies" are, apart from saying they include any inventions described in Coronel's patent applications. (Dkt. #1 at 4.) It further alleges that Coronel has been contacting FortuNet's customers and, using the October Judgment, falsely representing that at least one of FortuNet's bingo games on its Bingo Star system belongs exclusively to Coronel.

(*Id.*) FortuNet alleges that the names "FortuNet" and "Bingo Star" are registered trademarks of FortuNet. (*Id.* at 2.)

According to FortuNet, after falsely representing the true ownership of the Bingo Star games, Coronel and Wooten have been attempting to induce FortuNet's customers to either cancel or refuse to renew their contracts with FortuNet and contract with defendant eQube instead. (*Id.* at 4.)[1] FortuNet alleges that as a result of the defendants' misrepresentations, at least one FortuNet customer has refused to renew its contract and has instead contracted with eQube. It also alleges that Coronel has been informing FortuNet customers that he needs to subpoena their records to determine the monetary damages due to him from FortuNet's improper use of the "game strategies." According to FortuNet, the defendants are creating confusion in the marketplace regarding the true origin and ownership of FortuNet's games in its Bingo Star system and are destroying FortuNet's goodwill with its customers. FortuNet asserts claims under the Lanham Act and seeks declaratory relief.

Coronel moves for summary judgment, contending that all of the issues and claims in FortuNet's federal complaint were previously decided in the state court action. (Dkt. #7 at 13.) He also contends that he never misinformed FortuNet's customers about the ownership of the "game strategies" and that the October Judgment makes clear that he owns them. (*Id.* at 4.) Additionally, he argues that the "game strategies" have never been marketed or presented by Coronel to any FortuNet customer as having any connection to either FortuNet or Bingo Star. (*Id.* at 11-12.)

II. ANALYSIS

A. Defendant Coronel's Motion for Summary Judgment

Summary judgment is appropriate when the pleadings, discovery responses, and affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P.

---

[1] FortuNet also asserts that eQube is a competitor of FortuNet and that Wooten is an eQube employee. (*Id.*)

56(c)). For summary judgment purposes, I view all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

If the moving party demonstrates the absence of any genuine issue of material fact, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (citations omitted). He "must produce specific evidence, through affidavits or admissible discovery material, to show" a sufficient evidentiary basis on which a reasonable fact finder could find in his favor. *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson*, 477 U.S. at 248-49.

### i. Res Judicata and Collateral Estoppel

Coronel argues that the doctrines of res judicata and collateral estoppel bar all of FortuNet's claims because the claims and issues alleged in the federal complaint were fully litigated in the state court action and the same parties are involved in both cases. He contends that FortuNet has already had a full and fair opportunity to litigate its claims against him. Coronel argues further that the federal complaint contains no novel set of facts or claims that were not present in the state court action. He contends that that FortuNet could have brought Lanham Act claims in the state court action but failed to do so. Therefore, he argues, summary judgment is warranted.

FortuNet responds that the causes of action alleged in its federal complaint relate to conduct that occurred after FortuNet filed its state court action and after the October Judgment was issued. It argues that res judicata does not bar claims based on events that occurred after the filing of the initial action. In addition, it contends that the facts and issues underlying its Lanham Act and declaratory judgment claims relate to the defendants' misuse of the October Judgment, which have never been litigated in state court. FortuNet also argues that the various state law

claims that it brought in the state court action are not the same as those brought in its Lanham Act and declaratory relief claims in this lawsuit.

Under 28 U.S.C. § 1738, state judicial proceedings "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." "Under the federal full faith and credit statute, federal courts must give state court judgments the preclusive effect that those judgments would enjoy under the law of the state in which the judgment was rendered." Thus, in determining whether a prior state court action bars a subsequent federal action, I must analyze the res judicata (claim preclusion) and collateral estoppel (issue preclusion) principles under Nevada law. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 80 (1984); *see also Pedrina v. Chun*, 97 F.3d 1296, 1301 (9th Cir. 1996). Under Nevada law, for claim or issue preclusion to apply: (1) the issue decided in the prior adjudication must be identical to the issue presented in the action in question, (2) there must be a final judgment on the merits, and (3) the party against whom the judgment is asserted must have been a party, or in privity with a party, to the prior adjudication. *Britton v. City of N. Las Vegas*, 799 P.2d 568, 570 (Nev. 1990). These three factors apply to both issue preclusion and claim preclusion. *Five Star Capital Corp. v. Ruby*, 194 P.3d 709, 713 (Nev. 2008). Issue preclusion requires consideration of a fourth factor: "whether the issue was actually and necessarily litigated." *Id.*

"For the purposes of defining a claim under Nevada law, the authorities agree that when the same evidence supports both the present and the former cause of action, the two causes of action are identical." *Holcombe v. Hosmer*, 477 F.3d 1094, 1098 (9th Cir. 2007) (internal quotations and citation omitted). Additionally, if the claims in both cases are "based on the same set of facts and circumstances," the claims are identical. *Five Star Capital Corp.*, 194 P.3d at 714. Claim preclusion applies to all grounds of recovery that were or could have been brought in the first case. *Holcombe*, 477 F.3d at 1098.

Here, the evidence in the state and federal actions is not identical. FortuNet claims that Coronel is misusing the October Judgment in a way that violates its trademark rights under the

Lanham Act. The evidence that will be required to prove this claim is separate and distinct from the evidence needed to prove FortuNet's prior claims in state court. In addition, while somewhat interrelated, the facts relevant to FortuNet's federal claims are not the same as those relevant in the prior state action. FortuNet's federal claims relate to conduct that occurred after FortuNet filed its state court action, after a verdict was returned, and after the October Judgment was issued. Specifically, FortuNet alleges that Coronel is using the October Judgment to misrepresent the ownership of FortuNet's Bingo Star games to FortuNet's customers. Contrary to Coronel's assertion, it would have been impossible for FortuNet to bring its federal claims in the state court action given the timing of the alleged conduct. Therefore, because the issues and claims present in the federal complaint are based on different facts and circumstances and will require a different showing of evidence, issue and claim preclusion do not apply to FortuNet's federal claims.[2]

Thus, I deny summary judgment on these grounds.

### ii. Federal Anti-Injunction Act

Coronel argues that FortuNet is asking this court to intervene in an active and ongoing state court proceeding in violation of the Anti-Injunction Act. He further contends that the state court has already ruled on his right to subpoena FortuNet customers and therefore FortuNet should raise any issues it has with that ruling with the state court judge.

FortuNet responds that it is not requesting me to enjoin or intervene in the state court action, nor does it request that I rule on the validity of any discovery orders issued in state court. FortuNet argues that, regardless of how it seeks to address any potential abuses to the state court discovery order, it may pursue its federal claims in federal court.

The Anti-Injunction Act, 28 U.S.C. § 2283, provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." The Anti-Injunction Act also applies to declaratory judgments if those judgments

---

[2] Of course, if FortuNet requests to relitigate the issues decided in the state court action, I would decline to do so. I do not read the complaint to make such a request.

have the same effect as an injunction. *People of California v. Randtron*, 268 F.3d 891, 896 (9th Cir. 2001) *opinion amended and superseded on other grounds on denial of reh'g sub nom. California v. Randtron*, 284 F.3d 969 (9th Cir. 2002).

This statute is not relevant to the claims brought by FortuNet because FortuNet is not seeking to enjoin any proceedings in the state court action. Additionally, Coronel offers no argument as to why the declaratory relief sought by FortuNet has the same effect as an injunction. Therefore, I deny summary judgment on this ground.

### iii. Abstention under *Younger v. Harris*

Finally, Coronel argues that I should dismiss FortuNet's federal claims under the abstention principle articulated in *Younger v. Harris*. He contends that there is a strong federal policy against federal court interference in state court actions absent extraordinary circumstances. He argues that the claims and issues present in this action were already litigated in state court, that the remaining state court claims are part of an ongoing case, and that FortuNet has not demonstrated the "extraordinary circumstances" required for this court to interfere.

FortuNet responds that its federal claims are separate and distinct from the claims asserted in the state court case and that its federal complaint does not seek to enjoin or interfere in the state court proceedings. In addition, it argues that there is not a compelling state interest which would mandate that the state court hear a case brought under federal law and involving facts and issues substantially different that those forming the basis of the state court action. FortuNet also contends that the relief sought in the federal action cannot be fairly litigated in state court, both because it involves federal law claims and because amending the state court action now, after most of the claims have been resolved, would needlessly prolong and complicate the state court proceedings.

Pursuant to *Younger*, I must abstain if three requirements are met: (1) a state-initiated proceeding is ongoing, (2) important state interests are involved, and (3) the federal plaintiff has an adequate opportunity to litigate federal claims in the state proceedings. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). The Ninth Circuit has

identified a fourth requirement: that the federal court action would enjoin the state proceeding or have the practical effect of doing so. *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1149 (9th Cir. 2007). "Thus, once the three *Middlesex* elements are satisfied, the court does not automatically abstain, but abstains only if there is a *Younger*-based *reason* to abstain—i.e., if the court's action would enjoin, or have the practical effect of enjoining, ongoing state court proceedings." *Id.*

As stated previously, FortuNet is not seeking to enjoin the state court action, nor has Coronel offered any argument as to how continuing the federal action would have the practical effect of enjoining the state court proceeding. Coronel also offers no explanation as to what important state interest, if any, is implicated by this federal lawsuit. This suit involves claims and issues which arose after the state court action was brought and after most of the claims in that action had been resolved. There does not appear to be an important state interest weighing in favor of abstention. I therefore deny summary judgment on this ground.

### iv. New Arguments in Coronel's Reply

In his reply brief, Coronel introduced new arguments not raised in his original motion, including arguments related to the *Rooker-Feldman* doctrine and Federal Rule of Civil Procedure 9(b). (Dkt. #24 at 6-9.) I decline to consider arguments raised for the first time in a reply brief. *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) ("Where new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the [non-]movant an opportunity to respond.") (internal citation omitted); *see also Northwest Acceptance Corp. v. Lynnwood Equipment, Inc.*, 841 F.2d 918, 924 (9th Cir. 1988) ("It is well established in this circuit that the general rule is that appellants cannot raise a new issue for the first time in their reply briefs.") (internal quotations and citations omitted).

### v. FortuNet's Motion for Discovery Under Rule 56(d)

FortuNet argues that Coronel's motion for summary judgment should also be denied under Rule 56(d) because the motion was filed before the parties had an opportunity to conduct discovery. (Dkt. #15 at 20.) Alternatively, FortuNet countermoves for an order allowing

discovery pursuant to Rule 56(d). (*Id.*) Because I deny Coronel's motion for summary judgment, FortuNet's Rule 56(d) motion is moot.

### B. FortuNet's Motion for Sanctions under 28 U.S.C. § 1927

FortuNet moves for sanctions against Coronel and his counsel pursuant to 28 U.S.C. § 1927, arguing that they knowingly and recklessly filed the motion for summary judgment solely for the purpose of poisoning the well against FortuNet, delaying resolution of the matter, and needlessly increasing FortuNet's cost of litigation. (*Id.* at 22.) FortuNet further contends that the summary judgment motion makes unwarranted personal attacks against FortuNet and its counsel.

"Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. To be awarded, section 1927 sanctions "must be supported by a finding of subjective bad faith." *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Estate of Blas v. Winkler*, 792 F.2d 858, 860 (9th Cir. 1986) (citations omitted); *see also West Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1528 (9th Cir. 1990). Frivolousness by itself does not establish bad faith. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 638 (9th Cir. 1987) (internal quotations and citations omitted). Determining whether and how much sanctions are appropriate is within the court's discretion. *See Trulis v. Barton*, 107 F.3d 685, 694 (9th Cir. 1995). Nevertheless, "[d]iscretionary choices are not left to a court's inclination, but to its judgment; and its judgment is to be guided by sound legal principles." *Id.* (internal quotations omitted).

While Coronel and his counsel do not respond to FortuNet's motion for sanctions, I must still determine whether sanctions are warranted. Here, the underlying facts of the case are closely interrelated with the ongoing state court proceeding and the allegations in the complaint describe issues and claims that have been decided in state court. Therefore, although I am denying the summary judgment motion, I do not find there was bad faith in bringing the motion or an attempt

to delay the proceedings to strain FortuNet's resources. Thus, I deny FortuNet's motion for sanctions under section 1927.

### C. The Parties' Motions for Sanctions under Rule 11

Coronel asserts that FortuNet's claims against him are objectively unreasonable and frivolous and made for the purpose of needlessly increasing Coronel's costs of litigation. Thus, he seeks Rule 11 sanctions. (Dkt. #10.) FortuNet responds that Coronel's Rule 11 motion is frivolous and that its complaint is well-grounded in fact and law and not brought for an improper purpose. (Dkt. #17.) FortuNet countermoves for its attorney's fees and costs for having to respond to the motion, pursuant to Rule 11. (*Id.*)

Rule 11(b) states that "by presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" the filing is not being presented for an improper purpose and that the claims are warranted and non-frivolous. "If, after notice and a reasonable opportunity to respond, the Court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). "Where, as here, the complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997) (internal quotations and citation omitted); s*ee also Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (same). The decision whether to impose a sanction for a Rule 11(b) violation is committed to the court's discretion. *See Christian*, 286 F.3d at 1127.

Coronel's arguments in support of his Rule 11 motion are identical to the arguments he made as to why summary judgment is appropriate. Having addressed those arguments above, I will not repeat my analysis. FortuNet's complaint contains sufficient legal and factual bases to withstand Rule 11 sanctions. Moreover, it appears that FortuNet's counsel conducted a

reasonable and competent inquiry before signing and filing the complaint. (*See* Dkt. #14-2 at 3-4.) I therefore deny Coronel's motion for sanctions under Rule 11.

I also deny FortuNet's request that I award it attorney's fees and costs incurred in responding to Coronel's motion. It does not appear that the Rule 11 motion was filed for an improper purpose or that is was unreasonable. Therefore, an award of attorney's fees and costs is not warranted.[3]

### III.   CONCLUSION

IT IS THEREFORE ORDERED that Coronel's motion for summary judgment **(Dkt. #7) is DENIED.**

IT IS FURTHER ORDERED that FortuNet's motion for discovery under Rule 56(d) **(Dkt. #15) is DENIED as moot.**

IT IS FURTHER ORDERED that Coronel's motion for sanctions **(Dkt. #10)** and FortuNet's motion for sanctions **(Dkt. #16)** and request for attorney's fees and costs **(Dkt. #17) are DENIED.**

DATED this 27th day of January, 2016.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

---

[3] Although I am not entering Rule 11 sanctions at this point, I take this opportunity to warn all parties and counsel not to let this case degenerate into a series of "tit for tat" motions and requests for sanctions.